On the docket is case number 4-15-0919, People v. Timothy Long, appearing for the defendant is Attorney Gilbert Lenz, and for the state is Attorney Allison Page Brooks. Good afternoon. Mr. Lenz, are you ready to proceed? You may. Good afternoon, Your Honors. My name is Gilbert Lenz, and I am representing Timothy Long in this case from the Office of the State Appellate Defender. As Your Honors know, Mr. Long has raised several issues in his brief, and I'm happy to discuss any of the issues this Court wishes to address. However, I'd like to start this afternoon discussing the first argument concerning the reasonable doubt as to the quantity element for the conspiracy, and then move on from that to discuss at least some of the reasons why Mr. Long should get a near trial. So turning to the first argument, Your Honors, the state has conceded that it failed to prove the charged offense that Long conspired to produce more than 400 grams of methamphetamine. So under that concession, the only question remaining under this argument is whether the 286 grams found in the Gatorade bottle in the bathroom were attributable to Long. Now, the state could have proved this element in two ways, or both, one of two ways, or both. They could have offered some kind of evidence to allow a reasonable inference of Long's intent, to allow a constructive intent, essentially, where they could have offered evidence of the specific quantity of fuel that Long gave to Blumenberg, and then some evidence as to how much methamphetamine... Well, they didn't offer evidence as to the specific quantity of fuel that Long gave to Blumenberg. Well, the evidence offered was the 200-and-whatever-it-was grams, and that it was found in the cup, we'll call it, in the sink where the Coleman fuel was found. I'm sorry. That's how the quantity was established, wasn't it? The quantity of the methamphetamine that was found, yes. Right. But to establish the intent of a conspirator who's providing precursor for the maker of the methamphetamine, there's a two-step process to allow a reasonable inference of the intent of the conspirator giving the precursor. So that's where the quantity of the actual precursor comes into play. If I'm following your argument, you're saying that the state needed to put on evidence that a half-gallon of Coleman fuel would produce so many grams of meth. Is that what you're saying? Yes, that's what I'm saying. In order to prove Long's specific intent of what he intended to contribute to the conspiracy, he gave precursor to Blumenberg, but there was no evidence as to how much meth could be made. There was no evidence, first, as to how much precursor he gave him in a specific amount beyond that the can was half-full, a general term. We don't know exactly what that specific quantity was. And the second step of that is that there was no evidence about how much methamphetamine could have been made with that amount of precursor. Let me flip that on you. Why wouldn't it be a reasonable inference that the amount, the 230-some grams found in the cook located next to the Coleman fuel, why wouldn't that be enough of an inference that that's how much was cooked from that Coleman fuel? And if you, as a defendant, wanted to show that it was impossible to cook that much, you should have come forward with that evidence. Well, responding to the second point first, Your Honor, it's the State's burden to show that Mr. Long – Under my theory, a reasonable inference would be that the State met its burden, unless there's some other evidence of the contrary. Well, returning to the first point then, the mere proximity of the Gatorade bottle to the can of fuel is not enough to prove the intent to produce 100 grams beyond a reasonable doubt. Well, in this case, for a couple of reasons. First, the State offered no evidence – or Blumenberg never testified that he used Long's fuel at all. He never said, Long gave me fuel and I used it to make methamphetamine. Second of all, there was a plastic bottle of Coleman fuel also found in the bathroom, and Blumenberg never testified that that bottle was empty before he made the batch in the Gatorade bottle. So I think even in the light most favorable to the State, the best we can say about the Gatorade bottle in the bathroom is that Long's fuel perhaps contributed some of that quantity, but that's a far cry from beyond reasonable doubt of more than 100 grams and the very severe penalty that that quantity triggers. State evidence? A conspiracy to commit armed robbery. I provide a handgun. The purpose of the – that have planned it, and I know about it because I provided a gun for that purpose, don't take my handgun. They have other guns. They've got Long guns or other handguns that they use in the robbery. Am I exonerated from the conspiracy because they didn't use my handgun? I believe in that case, Your Honor – I took a substantial step toward aiding them in the commission of the crime by providing a firearm. And their later choice simply not to use that specific firearm doesn't take away my culpability, or does it? Well, I think in that particular case, Your Honor, that hypothetical defendant had a specific intent to contribute to an armed robbery, and the fact that the – Well, here, somebody decided that that was the client's intent. Yes, but the key question here is about the quantity. So the state had to prove, beyond a reasonable doubt, that he had a specific intent to contribute to a specific quantity of methamphetamine production. Why? Because of the penalties that are triggered by those quantities. I understood, but this is a cook house, and it's an ongoing conspiracy, isn't it? Well, certainly, Mr. Long was not liable for the cooks that Burge and Blumenberg did before or after the catering bought. Under the state's – as the state has even conceded, the methamphetamine in Burge's bedroom had nothing to do with Long, as the police at the time even acknowledged that they knew that Burge had some old products. So the only methamphetamine that's – Can't he join the conspiracy? I think they may have conceded that too quickly. The conspiracy isn't to produce a specific amount. The conspiracy is to aid in the manufacture of the meth, and it's an ongoing conspiracy. If you've got multiple parties, he's been to that trailer – it's a trailer, isn't it? There's a house. He's been there before. Why isn't the logical inference that it's an ongoing conspiracy, and it just happened that on this occasion it was that quantity of fuel that was provided? I think – I would disagree, Your Honor. I would say that that line of reasoning begins to run afoul of Aline and Apprendi because – What is – When you're talking about the – I'm sorry. Yes, go ahead. When you're talking about the very severe penalties that are triggered based on the different quantities at issue, it's the state's burden to show that this particular defendant who contributes to the conspiracy intended to help produce a specific quantity. Why? Because of the penalty? Because of the penalty.  Well, if you conspire with one cook who isn't very good at it, it's better for you than conspiring with guys that know how to produce because they're going to produce more, but you're only going to be – but then your fallback position is you're only going to be responsible for the very specific amount that you contributed to. Intended to contribute to, yes. Intended to contribute to. Intended to contribute to, absolutely, Your Honor. And there is a – So if I provide the house, then I'm responsible for all that they produce? I own the trailer. I say, go at it, guys. Use it for a cookout. Am I not responsible in that conspiracy for every single dose that comes out of there? I think that particular defendant may be, Your Honor. But when you're talking – and there's very little case law in Illinois about this specific question. There is a case on the issue you just raised. I don't know the name of it off the top of my head, but on the issue of inefficient cooks versus efficient cooks. And I believe the case law would say the question isn't how much was actually produced. It's how much the conspirator intended to help. So if an expert testified that this amount of precursor could have produced this amount of methamphetamine, regardless of the efficiency of the cook, that would be sufficient to show intent. That's a separate case. But then the knowledge of the provider. You're suggesting that he has to have specific knowledge as to how much meth his contribution will go toward. How many – unless you're highly experienced, you would just be guessing. And you really don't care how much is produced. You just know that you're contributing to the conspiracy. And maybe you'll get some back from it. Maybe they'll be honest with you about how much they created and how much they sold. But how many people that participate in this know exactly how many doses are going to be produced based upon what they contributed when they come back from Decatur with packages of Sudafed or they come from Kmart with batteries? How do they know how much is going to be produced? Well, and that's why the law allows for this kind of constructive intent where – and this is the Eighth Circuit case in Anderson where, you know, the two-step process the state can show a constructive intent by, you know, how much Sudafed – in your hypothetical, how much Sudafed they brought back from Decatur. And then how much meth can be made from that amount of Sudafed. The case law allows reasonable inference that – That's what their intent was. That's what their intent was. But here the state didn't do – didn't provide either of those pieces of evidence that would be necessary for this, what I'm calling constructive intent. And they definitely did not provide the direct evidence that, you know, Blumenberg never said, I used Long's fuel to make any methamphetamine. So – Was there evidence of when this other meth had been cooked? Probably within the previous week. The police officer said, you know, we know that there was some old product in the trailer. And Blumenberg testified that – How did he come up with that as to the age of that particular meth? Well, Blumenberg acknowledged that he and Virch had made, I think, at least one cook in the days prior to November 26th. And the police apparently believed that that was – the product in the bedroom was the old product. And it was not – it certainly was not tied in any way to the fuel that Long provided to Blumenberg on the 26th. The only fuel that's even closely tied to the fuel Long gave is – I'm sorry, the only meth that's closely tied to the fuel Long provided was those 286 grams in the bathroom. But for the reasons I've stated, the state failed to prove that the amount of Long's fuel contributed over 100 grams of that 286 grams or that he intended to produce more than 100 grams. The state says that U.S.B. Anderson is irrelevant because under 720 ILCS 646-65B, each conspirator is accountable for the entire cumulative weight attributable to the conspiracy. What's wrong with that argument? Well, I think we have to be careful about what we're calling the conspiracy. You know, when you're talking about whether a particular defendant is guilty of conspiracy, that does not mean that that defendant is liable for every gram of methamphetamine that the co-conspirators produce. Expanding the definition of the conspiracy to include methamphetamine that's produced beyond what this particular defendant contributed or intended to contribute would run afoul of the Alleyne principle that you can't subject someone to a greater penalty without specific proof beyond a reasonable doubt of the intent there. So I think the Constitution would counsel us to be careful before we expand. Conspiracy already expands a defendant's liability beyond what the simple participation in meth manufacturing. It subjects someone in this charged offense to 12 to 50 years in prison for an intent to produce more than, in this case, 400 to 900 grams or 100 to 400 grams for the lesser offense. Even if that methamphetamine is never produced, that person is still subject to that penalty. So to go – I think to adopt the State's position would be to go take it one step beyond that and say the person's liable for the methamphetamine that was produced either before or after his contribution but not linked to his contribution, merely because it was produced by the co-conspirators. That, I think, would go one step beyond what the Constitution allows. And I think that's what adopting the State's reasoning would do here. At most, Your Honor, I believe the most thing you said about the State's evidence in this case is that they show that Long intended to contribute to some quantity of methamphetamine production, but not that they show that he intended to help produce the 100 grams necessary to trigger the very severe penalty there. Such evidence can only support a conviction for the general form of the offense, and this Court should reduce his conviction to that general offense. If there are no further questions about the reasonable doubt claim, I would spend the remainder of my time discussing at least a few of the reasons why Mr. Long should get a new trial. Regardless of how this Court decides the first argument, the evidence here was close enough that Long was denied his right to a fair trial by the pervasive errors that infected this trial from beginning to end, opening statements, questioning, and closing arguments. The jury should have been presented here with a straightforward question of Long's credibility in the face of the State's largely circumstantial case of his guilt. But given everything the jury heard in this case that are detailed in the briefs, I don't believe we can have any confidence that the jury's verdict rested on nothing but the admissible relevant evidence. And I'd like to discuss a few of the most egregious errors that occurred at this trial. First, and the State concedes that error occurred here, is that the prosecutor impeached Long on cross-examination with his prior convictions in violation of a longstanding cardinal rule in Illinois that while prior convictions are allowed for impeachment, they cannot be presented during the testimony of the defendant. And this Court in Depper and the Third District in Nelson both found plain error and reversible error on this ground alone, just the mere fact of the impeachment by prior convictions. But here the error was worse because it was compounded in multiple ways. The judge only admitted the 2008 burglary conviction for impeachment, and the prosecutor even said that he was only going to talk about the 2001 Gettings incident for the facts of that case. But then even after acknowledging that, when Long gets on the stand, the prosecutor asked him, weren't you convicted as a result of that 2001 incident? So not only was he improperly impeaching him with prior convictions, one of the two convictions he impeached him with was never admitted by the judge. Wait, which one was not admitted? Yes, it's a little bit confusing. So the prosecutor impeached Long with two prior convictions, one that the judge admitted for impeachment, the 2008 burglary. But he also asked him, weren't you convicted of a meth-related offense in the 2001 incident related to Joseph Gettings? If you recall, Joseph Gettings was allowed to testify to the facts of the 2001 incident in order for the state to establish intent and knowledge about coal and fuel. And before Long testified, the prosecutor said, I'm not going to introduce the conviction from the 2001 incident. It's not for impeachment. It's just for the facts of that incident. And that's what Gettings testified to. But despite telling the court and defense counsel that, when Long got on the stand, the prosecutor asked him, weren't you convicted after that 2001 incident with Joseph Gettings? So that just compounded what was already very serious error, because he was already committing error by impeaching him with the priors in the first place. The prosecutor then further compounded that error by both emphasizing those priors in closing and exaggerating the number of them when he told the jury in closing that there were three prior convictions that I told you about. So just to discuss this error by impeachment with prior convictions, it was compounded in multiple ways. If that was reversible error in Decker and Nelson, it certainly should be reversible error here. And that would be true if that was the only error here. But there were many other serious errors. For example, the prosecutor engaged in a systematic bolstering of his key witness, Michael Blumenberg. Most egregiously, in closing argument, he flat out told the jury, quote, I really believe that Michael Blumenberg was very, very truthful. Again, another cardinal rule violated. Prosecutors are not allowed to personally say that they believe that a witness was credible or not credible. And again, that would be serious error requiring new trial alone. But this particular error was also compounded multiple ways. The prosecutor elicited evidence that Blumenberg gave a prior consistent statement, that the prior consistent statement was the truth, just like his trial testimony. In closing argument, the prosecutor said that prior consistent statement Blumenberg gave was the same truth that you heard here at trial. Mr. Lenz, I'm sorry, but you're out of time. Oh, I'm sorry. You'll have time and rebuttal. Okay. Thank you very much. Counsel? Thank you, Your Honors. May I please the Court and Counsel? My name is Allison Page Brooks. I appear on behalf of the people. The defense's position is that it appears to be that the statute is unconstitutional in violation of the Sixth Amendment right to have elements submitted to the jury and proved beyond a reasonable doubt. But really what the defense is arguing about is the nature of the element itself. So the statute provides that the penalty is for the methamphetamine conspiracy offense, includes the cumulative weight that's attributable to the conspiracy for the duration of the conspiracy. So in other words, that is the element that the state has to prove in order to obtain a higher penalty. So there's nothing unconstitutional about that. to this methamphetamine conspiracy case, which has a unique statute. So there's no Sixth Amendment violation. The statute itself is not unconstitutional just because it phrased the element in a different way. The element still has to be proved and found by a jury beyond a reasonable doubt. And that was done here except for the fact that he was convicted of the over 400 grams offense. And the state has conceded that the cumulative weight attributable to the conspiracy for the duration of the conspiracy beyond a reasonable doubt is only shown to be the 285.5 grams that were found in the Gatorade bottle in the bathroom sink. And the reason why is because this conspiracy was charged, I believe, was related to a conspiracy between defendant and Michael Blumenberg to participate. The offense that was the object of the conspiracy was participation in the manufacture of methamphetamine. That conspiracy only begins when the defendant agrees to provide the Coleman fuel. And the methamphetamine cooks that were already in Burge's bedroom, those were already done. The evidence showed that Burge was out of things to make more methamphetamine. The defendant knows this, that he needs more items including Coleman fuel. And so a witness, I think it was Kiefer, saw Blumenberg shaking this Gatorade bottle. So that's after the Coleman is delivered by the defendant. So the only methamphetamine that was obtained during the duration of the conspiracy was that substance-containing methamphetamine that was in the Gatorade bottle inside the bathroom, which happened to be very close by the jug of Coleman fuel. Now the defendant says there was no proof of how much was in the Coleman, but People's Exhibit 2 referred to the fact that it was a half-gallon can and it was half, I'm sorry, it was a one-gallon can and it was half-full. So there is evidence in the records how much Coleman that he provided. I believe the defendant's statements were insisting that there's only a little bit in it, but that was contradicted by other evidence. But it's not necessary for the state to show exactly how much methamphetamine could have theoretically been derived from the Coleman that the defendant provided because that substance-containing methamphetamine is in the sink right next to the Coleman. So the state proved that that actual substance came, at least inferentially, under the circumstances from that Coleman fuel the defendant provided because the evidence showed that Burge was out of Coleman fuel to make more methamphetamine. And so that's why they needed more and that's why the defendant gave it, because they were all paranoid, they were all being surveilled by police, those facts are also in the record, they're all speaking in code. So when the defendant drops by the Coleman, it's a reason why it had to be delivered by someone outside the Burge-Blumenberg orbit. So that was shown that that Coleman actually produced the 285.5 grams of substance-containing methamphetamine. There was no need to prove it as a matter of theory. So therefore, the defense also criticizing the state's lack of proof of intent. Well, the defense is misreading the statute. The element that has to be proved under the Sixth Amendment is the cumulative weight of substance attributable to the conspiracy for the duration of the conspiracy. That means the conspiracy to have Blumenberg participate in methamphetamine manufacture. Now, that offense, weight produced, is an element. And the penalty for the methamphetamine conspiracy is the same penalty that would apply to that offense, which is the object of conspiracy, being participation in methamphetamine manufacture. And with this caveat that he's also accountable for everything that was produced during the conspiracy. So essentially, even if the defendant intended on making 10,000 grams of methamphetamine and said so to the police, it seems like if only 285.5 grams were actually produced, that's the only crime that was committed was the unlawful participation of methamphetamine, and it would be punished as a 285-gram case, which is in that 100 to 400 range. So the defense sort of like intent, whether he intended only a little bit or a large amount to be produced, is irrelevant. It's not an element of the offense of methamphetamine conspiracy of which he was convicted. We did not have to prove the defendant intended that any particular amount of methamphetamine be produced. We had to show that a certain cumulative weight was produced, and we did. But not the 400 that was the conviction. It should be only 100 to 400. So for those reasons, this court needs to closely look at the nature of the elements and review the statute de novo, because there is not a lot of precedent on this particular statute. Review the elements de novo and figure out what actually is required to be proved here, and then figure out whether the state met its burden of proof, at least as to this included offense. And so for those reasons, the state would request this court to reduce that offense of conviction to the methamphetamine conspiracy of participation in methamphetamine manufacture 100 to 400 grams. That's a Class X felony. It's not less than nine years and not more than 40 years. The defendant's offense had a minimum of 12, and he got 30. So it would be in the interest of justice to also reverse the sentence and remand for resentencing. I understand he also makes sentencing arguments, which would become moot at this point if this court agrees with the state's concession. So with respect to the other issues, the defense says that there were actually only, I'm not sure if they said how many prior convictions were actually admitted or requested to be admitted. There is some confusion in the defense, and this court should very closely look at the record. The defense is saying that the 2001 prior conviction was not intended to be admitted for impeachment, referring to a transcript at a hearing that happened after the prosecutor already said that that case would be used for impeachment purposes. Now, so the prosecutors did say they wanted four for impeachment. Initially, the trial court said, write out aggravated domestic battery, no go. So then it became there were three others. The burglary was in 2008. Then the trial court postponed its ruling with respect to the 2001 and the 2004. And then the next day ruled by docket entry that those convictions could be used to impeach the defendant. So now we've got the 2001, and the 2001 was the manufacturing of methamphetamine case. The 2004 was transporting anhydrous ammonia, and the 2008 was a burglary. And all three were admitted, albeit improperly, as cross-examination of a defendant. The defendant on trial cannot be cross-examined about his prior convictions. The state admits that. But it is not, per se, reversible error. Under the Madison case, the defendant has to show they were denied substantial justice. And here, these convictions were going to come in anyway. The trial court was allowing them. So the jury was going to know about them. But the only problem was that the defendant was asked to sort of admit them on the stand. And the rules say that that's not something that's proper. But that doesn't mean that he was denied substantial justice as a result. So, therefore, the Depart case did find some plain error in this, but they didn't say what prong they were applying. And in this case, it's not a first-prong plain error case, because the state's position is that the circumstantial evidence of guilt, relying most heavily on the defendant's own words, which were on video, admitting all the facts about how he knew that they were making methamphetamine in the trailer and that they needed more materials. So it seems like his idea that Blumenberg needed this to fuel a stove, for example, is a very thin excuse, particularly when these people were paranoid and talking in code, and that's something that was recognized. So this is not a first-prong plain error case. And it's not, per se, a reversible error. So, therefore, he's not going to get a new trial on that ground. With respect to the claim that the prosecutor argued that Blumenberg was truthful, again, that's not an obvious error. It's a situation where the prosecutor should probably refrain from starting out a phrase, I believe, but it's not automatically reversible either, because the prosecutor went on to explain, right after saying he believed that Blumenberg was truthful, he explained exactly why, and it involved evidence, involved admitted evidence, involved the fact that Blumenberg's testimony was corroborated, in large part, by things that came out of the defendant's own mouth, and the jury heard that. And so this is not a case where the prosecutor was relying on the authority of their office or their own sort of internal lie detector in order to convince the jury that they should believe a witness because the prosecutor has some sort of private knowledge that they didn't hear about. No, the prosecutor told them why to believe Blumenberg. And by phrasing it, I believe, admittedly, would be ill-advised. It's not a ground for reversible error. And those are the points that I wanted to respond to. And Shane, any questions on any other matters as well? Okay, thank you. Thank you. Roberto Larga? As to the reasonable doubt claim, I believe if a defendant gave a co-conspirator a sufficient amount of precursor to make 10,000 grams and said, I want you to make 10,000 grams, I think that defendant would be guilty under the conspiracy statute. But here, you know, the Omas Supreme Court has said that the first element of any conspiracy charge is specific intent to commit a target offense. So this is why the state had to prove, beyond a reasonable doubt, that with some sufficient evidence that Long intended to help produce more than 100 grams to sustain the conviction that they're recommending. Anything beyond any attribution of a quantity beyond what Long intended to help produce would be in violation of the Constitution. We're not saying the statute is unconstitutional. We're saying a conviction without that evidence would be unconstitutional. And on the prior convictions, briefly, the prosecution in this case asked to have several prior convictions admitted for impeachment. But everyone agreed before the testimony occurred that the 2001 incident was not coming in as a conviction for impeachment. It was only on the facts. So then when the prosecutor asked Long about that specific prior conviction, that only added to the already serious error of the improper impeachment. And just in conclusion, Your Honors, I would just say we should – I believe this Court should reject the state's invitation to address each one of these errors individually and determine whether each one is a reversible error. I think there were so many errors I didn't get a chance to discuss all of them. But so many errors in this case, and many of them were very serious, that courts have reversed on one or two of these issues. We have many of those issues here. And the combined effect of those, I think, plainly threatened to tip the scales of justice against Long in this case, particularly where if this Court does not reduce the conviction to the lowest form of the quantity element, then for all the reasons in Argument 1, at minimum, the state's evidence on the quantity element was closely balanced, such that all of these errors require reversal under the plain error doctrine, setting aside the fact that the intent element was also closely balanced. So for all those reasons, Your Honor, we'd ask this Court to reverse Long's conviction to the general form of the offense. And in addition, or the alternative, I remand for a new trial. All right. Thank you. The case will be taken under advisement.